UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAMADA WORLDWIDE INC.**, a Delaware Corporation,<br><br>**Plaintiff,**<br><br>v.<br><br>**KEYS HOSPITALITY, LLC**, a Kansas Limited Liability Company; **BRUCE L. ARMSTRONG**, an individual; and **BRIAN G. SMITH**, an individual,<br><br>**Defendants.** | Civil Action No. 18-3993 (JXN)(JSA)<br><br>**OPINION**<br><br><br><br><br><br><br><br><br><br>*Consolidated with* |
| **RAMADA WORLDWIDE INC.**, a Delaware Corporation,<br><br>**Plaintiff,**<br><br>v.<br><br>**KEYS OF TOPEKA HOSPITALITY, LLC**, a Kansas Limited Liability Company; **BRUCE L. ARMSTRONG**, an individual; and **BRIAN G. SMITH**, an individual,<br><br>**Defendants.** | Civil Action No. 19-14575 (JXN)(JSA) |

**NEALS**, District Judge

This Matter comes before the Court upon Plaintiff Ramada Worldwide Inc.'s ("Plaintiff" or "RWI") motion for summary judgment against Defendant Bruce L. Armstrong ("Defendant" or "Armstrong") only,[1] on the Sixth Count of its Complaint in the matter *Ramada Worldwide Inc. v.*

---

[1] The Sixth Count of RWI's Complaint alleges breach of a personal guaranty against Armstrong and Brian G. Smith ("Smith"). (*See* Complaint ("Compl.") ¶¶ 50-53, ECF No. 1.) However, Armstrong is the only active defendant in this lawsuit as Defendant Smith was dismissed without prejudice from this matter on August 29, 2019, following his Chapter 7 bankruptcy discharge. (ECF No. 34.)

*Keys Hospitality, LLC, et al.*, Civil Action No. 18-3993, pursuant to Federal Rule of Civil Procedure 56. (ECF No. 90.) Armstrong opposed the motion (ECF No. 92), and Plaintiff replied in further support (ECF No. 93). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391(b), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's motion for summary judgment is **GRANTED.**

## I. BACKGROUND[2]

RWI is a Delaware corporation with its principal place of business in New Jersey. (PSOMF ¶ 1, ECF No. 90-3.) Keys Hospitality is a limited liability company organized under the laws of and maintaining its principal place of business in Kansas. (PSOMF ¶ 2.) The members of Keys Hospitality are defendants Armstrong, an individual and citizen of the State of Utah, and Brian G. Smith ("Smith"), also an individual and citizen of the State of Kansas. (PSOMF ¶¶ 3–5.)

This suit arises from a franchise agreement between RWI and Keys Hospitality, LLC ("Keys Hospitality") on June 23, 2014 (the "Franchise Agreement"), which required Keys Hospitality to operate a 250-room Ramada® guest-lodging facility located at 500 Merrimac Trail, Williamsburg, Virginia 23185, designated as Site No. 09995-03943-05 (the "Facility") for a term of fifteen years. (PSOMF ¶ 7; Affidavit of Kendra Mallet ("Mallet Aff."), Ex. A ("Franchise Agreement"), ECF No. 90-5.) Armstrong signed the Franchise Agreement on behalf of Keys

---

[2] The facts derive from Plaintiff's Statement of Undisputed Material Facts ("PSMF") (ECF No. 90-3), Defendant's Response to Plaintiff's Statement of Facts ("DRSMF") and Counter Statement of Facts ("DCSF") (ECF No. 92-8), and Plaintiff's Response to Defendant's Counter Statement of Facts ("PRCSF") (ECF No 93-1), along with the supporting documents to this pending motion. For the sake of brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

Hospitality. (PSOMF ¶ 8; Franchise Agreement at 28.) On the same date, Armstrong executed a guaranty of Keys Hospitality's obligations under the Franchise Agreement ("Guaranty"). (PSOMF ¶¶ 8, 20-21; Mallet Aff., ¶¶ 22, 23, Ex. B ("Guaranty"), ECF No. 90-5.) The Guaranty committed Armstrong to make any unpaid payments on behalf of Keys Hospitality if Keys Hospitality defaulted under the Franchise Agreement, due immediately upon default. (PSOMF ¶ 22.) The Guaranty also committed Armstrong and Smith to pay costs, including reasonable attorney's fees, that RWI might incur in enforcing the Guaranty or Franchise Agreement. (PSOMF ¶ 23.)

Under the terms of the Franchise Agreement, Keys Hospitality was required to make periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").[3] (PSOMF ¶ 10; Franchise Agreement §7 and Schedule C.) In the event of an early termination of the Franchise Agreement by Keys Hospitality, Keys Hospitality was required to pay liquidated damages to RWI. (PSOMF ¶ 18; Franchise Agreement § 12.1.) In the event of litigation to enforce the terms of the Franchise Agreement or collect amounts owed under it, the non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees incurred by the prevailing party. (PSMF ¶ 39; Franchise Agreement §17.4.) The Franchise Agreement included a New Jersey choice of law provision. (*See* Franchise Agreement §17.6.3.)

---

[3] Section 7 of the Franchise Agreement defines Recurring Fees as consisting of a monthly Royalty fee equal to "four and one-half percent (4.5%) of Gross Room Revenues of the Facility accruing during the calendar month, (Franchise Agreement § 7.1.1); a monthly System Assessment Fee equal to four percent (4.0%) "of Gross Room Revenues" of the Facility, consisting of a "Marketing Contribution" of "2.0% of Gross Room Revenues" and "Basic Reservation Fee" of "2.0% of Gross Room Revenues" (Franchise Agreement §7.1.2 and Schedule C); and interest "on any past due amount payable to [RWI] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (Franchise Agreement §7.3.)

Additionally, the parties entered into a Development Incentive Note Development Incentive Note ("DIN") in connection with the Franchise Agreement. (Certification of Michael Orozco ("Orozco Cert."), Ex. B, ECF No. 92-2.) Pursuant to the Franchise Agreement, Keys Hospitality would be eligible to participate in RWI's Development Incentive Financing Program and obtain a DIN for $225,000 if certain conditions were met. (Franchise Agreement §18.1.2.) The Franchise Agreement further provided that:

> The Development Incentive will be disbursed after (i) you have passed a final credit/financial review with no material adverse changes in your or your guarantors' business, legal, litigation, bankruptcy status or finances or the financial viability of the Facility since preliminary approval, (ii) the Facility officially opens with our consent, (iii) you have completed all required pre-opening improvements specified in this Agreement; and (iv) you have paid the Initial Fee.

(Franchise Agreement §18.1.3.)

RWI issued Keys Hospitality a Development Incentive check dated September 22, 2016, to Keys Hospitality for $225,000.00. (Orozco Cert., Ex. C, ECF No. 92-3.) Thereafter, on or about October 2, 2016, Keys Hospitality filed for bankruptcy. (PRCSF ¶ 7.) On or about October 14, 2016, RWI stopped payment on the $225,000.00 check to Keys Hospitality. (*Id*.; Orozco Cert., Ex. C.)

On November 18, 2016, there was a fire at the Facility. (DCSF ¶ 8.) As a result, Keys Hospitality was unable to operate the Facility as a Ramada® "due to electrical issues and the fire marshal requirements." (*Id*.) During the time that the Facility was closed, RWI issued an Acknowledgement of Temporary closing pursuant to Section 11.3 of the Franchise Agreement.[4]

---

[4] The "Casualty and Condemnation" provision of the Franchise Agreement provides, in relevant part, as follows:

> You will notify us promptly after the Facility suffers a Casualty that prevents you from operating in the normal course of business, with less than 75% of guest rooms available. … You will tell us in writing within 60 days after the Casualty whether or not you will restore, rebuild and refurbish the Facility to conform to System Standards and its condition prior to the Casualty. This restoration will be completed within 180 days after the Casualty. You may decide within the 60 days after the

First, by letter dated December 29, 2016, RWI acknowledged that the Facility would be temporarily closed from November 18, 2016, through January 15, 2017, for renovations and that the Facility would reopen on January 16, 2017. (PSOMF ¶ 24; Mallet Aff., Ex. C.) Second, in a letter dated February 15, 2017, RWI acknowledged an extension of the temporary closing of the Facility through February 17, 2017, with the Facility scheduled to reopen on February 18, 2017. (PSOMF ¶ 25; Mallet Aff., Ex. D.) Thereafter, RWI acknowledged two additional extensions of Keys Hospitality's temporary closing of the Facility through March 9, 2017, with the Facility scheduled to reopen on March 10, 2017. (PSOMF ¶¶ 26-27; Mallet Aff., Exs. E, F.) Later, in a letter dated April 7, 2017, RWI advised Keys Hospitality that it was in breach of the Franchise Agreement because it had not reopened the Facility on March 10, 2017, as agreed. RWI further advised that if Keys Hospitality did not cure the default and reopen the Facility within ten (10) days, then the Franchise Agreement might be subject to termination. (PSOMF ¶ 28; Mallet Aff., Ex. G.) Keys Hospitality did not reopen the Facility. (PSOMF ¶ 29.)

On April 19, 2017, Keys Hospitality "unilaterally terminated" the Franchise Agreement by ceasing to operate the Facility as a Ramada® guest-lodging facility. On May 5, 2017, RWI acknowledged Keys Hospitality's termination of the Franchise Agreement, effective April 19, 2017, and advised Keys Hospitality that under the terms of the Franchise Agreement, it was required to pay RWI Liquidated Damages of $500,000.00 and outstanding Recurring Fees and other charges under the Franchise Agreement. (PSOMF ¶ 29; Mallet Aff., Ex. H.) Despite due

---

Casualty, and if we do not hear from you, we will assume that you have decided, to Terminate this Agreement, effective as of the date of your notice or 60 days after the Casualty, whichever comes first. If this Agreement so terminates, you will pay all amounts accrued prior to termination and follow the post-termination requirements in Section 13. You will not be obligated to pay Liquidated Damages if the Facility will no longer be used as an extended stay or transient lodging facility after the Casualty.

(Franchise Agreement § 11.3.1.)

demand, Armstrong has not paid the outstanding Recurring Fees and liquidated damages and admits to never paying such amounts. (PSOMF ¶ 30.)

On March 22, 2018, RWI filed a Complaint against defendants Keys Hospitality, LLC, Armstrong, and Brian G. Smith, seeking damages for breach of the Franchise Agreement and personal guaranty (the "First Lawsuit"). (*See generally* Compl.)[5] Armstrong filed his Answer and Counterclaim on June 29, 2018.[6]

On July 1, 2019, RWI filed a Complaint against Defendants Keys of Topeka, Armstrong, and Brian G. Smith, seeking damages for breach of a franchise agreement and personal guaranty (the "Second Lawsuit").[7] (*See Ramada Worldwide Inc. v. Keys of Topeka Hospitality, LLC, et al.*, Civil Action No. 19-cv-14575, ECF No. 1.) By Order dated September 9, 2019, the First Lawsuit and the Second Lawsuit were consolidated for all purposes. (ECF No. 35.)

Discovery closed on January 31, 2020. (*See* ECF No. 37.) On August 19, 2021, the undersigned granted RWI's request to file two separate summary judgment motions, one as to the First Lawsuit and one as to the Second Lawsuit. (*See* ECF No. 73.)

On December 17, 2021, RWI filed its summary judgment motion in the First Lawsuit, *Ramada Worldwide Inc. v. Keys Hospitality, LLC, et al.*, Civil Action No. 18-cv-3993. (*See* ECF No. 75.) By Order dated August 21, 2023, RWI's summary judgment motion was administratively terminated, and the parties were directed to attend mediation pursuant to L. Civ. R. 301.1. (*See*

---

[5] Default was entered in the First Lawsuit against defendants Keys Hospitality and Smith on June 12, 2018. By Order dated August 20, 2018, RWI was directed to move for default judgment against defendants, Keys Hospitality, LLC, and Brian G. Smith, after the resolution of the pending claims against Armstrong in the First Lawsuit. (ECF No. 15.) Defendant Smith was subsequently dismissed without prejudice from the First Lawsuit on August 29, 2019, following his bankruptcy filing. (ECF No. 34.)

[6] Armstrong's pleading is titled "Answer and Counterclaim," but contains no Counterclaim. (*See* ECF No. 12).

[7] Default was entered in the Second Lawsuit against defendants Keys of Topeka Hospitality, LLC, and Smith on August 15, 2019. Defendant Smith was also dismissed without prejudice from the Second Lawsuit on August 29, 2019, following filing for bankruptcy.

ECF No. 84.) The parties attended mediation on November 29, 2023, but were unable to resolve this matter. (*See* ECF No. 87.) As a result, on December 18, 2023, RWI was directed to re-file its motion for summary judgment. (*See* ECF No. 88.)

On January 2, 2024, RWI moved for summary judgment against Armstrong in his capacity as guarantor for failing to pay the Recurring Fees and liquidated damages for premature termination on behalf of Keys Hospitality. (*See* ECF No. 90.) Armstrong opposed the motion (ECF No. 92), and RWI replied in further support (ECF No. 93). This motion is now fully briefed and ripe for the Court to decide.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. The Court also will not "resolve factual disputes or make credibility determinations." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54

F.3d 1125, 1127 (3d Cir. 1995)). Although the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*, at 250. The Court must grant summary judgment if the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

### III. DISCUSSION

#### A. RWI Is Entitled to Summary Judgment on its Breach of Guaranty Claim Against Armstrong (Sixth Count)

RWI alleges that Armstrong breached the Guaranty by failing to pay the damages owed to RWI due to Keys Hospitality's premature termination of the Franchise Agreement. (ECF No. 90-4 at 5-9.) Pursuant to the choice of law provision set forth in Section 17.6.1 of the Franchise Agreement, which the Guaranty incorporates by reference, New Jersey law governs RWI's breach of guaranty claim. (*See* Franchise Agreement §17.6.1; Guaranty (incorporating by reference Section 17 of the Franchise Agreement).)

To prove a claim for breach of a personal guaranty, the plaintiff must show (1) the execution of the guaranty by the guarantor; (2) the principal obligation and terms of the guaranty; (3) the lender's reliance on the guaranty in extending monies to the borrower; (4) default by the principal obligor, (5) written demand for payment on the guaranty; and (6) failure of the guarantor to pay upon written demand. *Ramada Worldwide Inc. v. Jafri*, No. 12-CV-5301 KM, 2015 WL

8

404399, at *3 (D.N.J. Jan. 29, 2015) (citing *U.S. on Behalf of Small Bus. Admin., v. DelGuercio,* 818 F.Supp. 725, 728 (D.N.J.1993)). RWI argues that each of these elements has been conclusively established here. The Court agrees.

As to the first prong, Armstrong admits executing the Guaranty. (*See* Guaranty; DRSMF ¶ 21.) As to the second prong, the terms of the Guaranty are unambiguous and clearly set forth Armstrong's obligation to "immediately make each payment and perform or cause [Keys Hospitality] to perform, each unpaid or unperformed obligation of [Keys Hospitality] under the [Franchise] Agreement." (*See* Guaranty.) As to the third prong, RWI's reliance upon the Guaranty is evidenced by its express language, which states that the purpose of the Guaranty is "[t]o induce Ramada Worldwide, Inc. ....to sign the Franchise Agreement." (*See id*.) As to the fourth prong, it is undisputed that Keys Hospitality defaulted under the terms of the Franchise Agreement. (Mallet Aff. ¶¶ 28-29.) This unilateral termination constituted a breach of the Franchise Agreement pursuant to Section 11.2 of the Agreement. (*See* Mallet Aff., Ex. H; Franchise Agreement §11.2.) On April 19, 2017, Keys Hospitality unilaterally terminated the Franchise Agreement by ceasing to operate the Facility as a Ramada® guest lodging facility. (*See* Mallet Aff. ¶¶ 28-29, Ex. H; Franchise Agreement §§ 3.2, 11.) As to the fifth prong, RWI made a written demand for payment on the Guaranty. By letter dated May 5, 2017, RWI acknowledged Keys Hospitality's unilateral termination of the Franchise Agreement and informed Keys Hospitality that it was required to pay RWI $500,000 in liquidated damages for the premature termination of the Agreement as well as all outstanding Recurring Fees up to the date of termination. (Mallet Aff. ¶ 27, Ex. H.) Finally, the sixth prong is met because Armstrong has failed to pay the amounts owed despite RWI's written demand for payment. (Mallet Aff. ¶ 30.) Armstrong does not dispute the validity of the Guaranty or otherwise challenge RWI's damages; instead, Armstrong contends that RWI is not entitled to

summary judgment because RWI breached the Franchise Agreement and the Development Incentive Note ("DIN") prior to Keys Hospitality's alleged unilateral termination. (*See* ECF No. 92-7 at 4, 7.)  First, Armstrong contends that RWI breached the Franchise Agreement when it canceled payment on the DIN without notice (ECF No. 92-7 at 5-6) and refused to extend the temporary closure as provided under Section 11.3 (Casualty and Condemnation) of the Franchise Agreement (*Id*. at 9). Second, Armstrong argues that RWI is not entitled to damages as the Franchise Agreement contained a "special stipulation" that allowed Keys Hospitality to terminate without penalty within three years. (ECF No. 97-2. at 2.) The Court will consider each argument in turn.

### 1. The Development Incentive Loan

Armstrong contends that RWI breached the Franchise Agreement first when it canceled payment on the $225,000.00 DIN to Keys Hospitality. (*See* ECF No. 92-7 at 5-8.) In his Certification, Armstrong contends that RWI improperly canceled payment on the DIN even though Keys Hospitality was "compliant with [RWI]'s remodeling compliance and having all fees and costs current." (Orozco Cert., Ex. F, Certification of Bruce Armstrong ("Armstrong Cert.") ¶¶ 3-4, ECF No. 92-6.) Armstrong further asserts that "[t]here is no documentation of any kind that was ever received by Plaintiff[] which provided an explanation for this decision, and more specifically, how or why it was permitted under the Franchise Agreement or DIN." (ECF No. 92-7 at 6.) RWI contends that "Armstrong's argument is without merit and supported only by his self-serving Certification that directly contradicts facts in the record." (ECF No. 93 at 5) (citing *Herbert v. Newton Mem. Hosp*., 933 F.Supp. 1222, 1229 (D.N.J. 1996) (in opposing summary judgment, "a party cannot rely upon self-serving conclusions, unsupported by specific facts in the record.").) The Court agrees.

First, the Court finds that Armstrong's arguments are not supported by the language of the Franchise Agreement or his sworn deposition testimony, which acknowledges that funding for the DIN will not be granted if Keys Hospitality files for bankruptcy. (*See* Franchise Agreement §18.1.3; Certification of Bryan P. Couch ("Couch Cert."), ¶ 5, Ex. C, at T49:5-23, ECF No. 90-7.) Specifically, the Franchise Agreement provides, in relevant part, that "[t]he Development Incentive will be disbursed after (i) you have passed a final credit/financial review with no material adverse changes in your or your guarantors' business, legal, litigation, bankruptcy status or finances or the financial viability of the Facility since preliminary approval..." (Franchise Agreement § 18.1.3.) During his deposition, Armstrong admitted that RWI sent Key Hospitality a $225,000.00 Development Incentive loan check dated September 22, 2016, Keys Hospitality filed for bankruptcy on October 2, 2016, and RWI stopped payment on the $225,000.00 check thereafter. (*See* Couch Cert., ¶ 5, Ex. C, at T22:16- T25:8, T51:15-T53:5.) Further, while Armstrong contends that RWI never sent a notice of default or explanation justifying the cancellation of the Development Incentive loan check, the Franchise Agreement requires RWI to issue Key Hospitality such notice prior to canceling the check nor has Armstrong provided any evidence suggesting that such notice was required. (*See* Franchise Agreement §18.1; Orozco Cert., Ex. B.) Accordingly, Armstrong has failed to show that RWI breached the Franchise Agreement or the DIN by canceling payment on the DIN.

### 2. The Casualty and Condemnation Section of the Franchise Agreement

Armstrong's second argument in opposition to RWI's summary judgment motion is that RWI is not entitled to liquidated damages because it terminated the Franchise Agreement prior to the expiration of the 180-day window provided by Section 11.3 (Casualty and Condemnation) of

the Franchise Agreement. (ECF No. 92-7 at 8-9.) The Court finds, however, that Armstrong misreads the language of Section 11.3.1 of the Franchise Agreement.

Section 11.3.1 of the Franchise Agreement provides that "after the Facility suffers a Casualty that prevents [it] from operating in the normal course of business," Key Hospitality is to "promptly" notify RWI in "in writing within 60 days after the Casualty whether or not you will restore, rebuild and refurbish the Facility to contemn to System Standards and its condition prior to the Casualty." The Franchise Agreement further provides that:

> This restoration will be completed within 180 days after the Casualty. You may decide within the 60 days after the Casualty, and if we do not hear from you, we will assume that you have decided, to terminate this Agreement, effective as of the date of your notice or 60 days after the Casualty, whichever comes first." If this Agreement so terminates, you will pay all amounts accrued prior to termination and follow the post-termination requirements in Section 13. You will not be obligated to pay Liquidated Damages if the Facility will no longer be used as an extended stay or transient lodging facility after the Casualty.

(Franchise Agreement § 11.3.1.) Thus, according to Section 11.3.1, Keys Hospitality would not owe RWI liquidated damages if Keys Hospitality had elected to terminate the Franchise Agreement within 60 days after the November 16, 2016 fire.  Here, Armstrong has not provided any indication that Keys Hospitality elected to terminate the Franchise Agreement within the 60-day window and is, therefore, entitled to a waiver of liquidated damages owed to RWI. Further, there is no such preclusion against recovery of liquidated damages Section 11.3.1 for termination of the Franchise Agreement outside of the 60-day window. Consequently, the Court finds that Armstrong has failed to support his claim that RWI improperly terminated under the Casualty and Condemnation section of the Franchise Agreement.

### 3. The "Special Stipulation" in the Franchise Agreement

While not addressed in the "Legal Argument" section of his opposition brief, for purposes of completion, the Court will address Armstrong's contention that Keys Hospitality had a "special stipulation" in the Franchise Agreement that allowed it to terminate the Franchise Agreement within three years without penalty. (*See* ECF No 92-7 at 2.) Armstrong does not cite any specific language from the Franchise Agreement to support his argument; however, in his Counter Statement of Facts in Opposition, Armstrong refers to Section 18.1 of the Franchise Agreement in support of this contention. (*See* DCSF ¶ 1.) RWI contends that section 18.1 of the Franchise Agreement contains no such stipulation. (ECF No. 93 at 3.) The Court agrees.

The portion of the Franchise Agreement that addresses "Special Stipulations" exclusively relates to the terms and conditions of the $225,000.00 Development Incentive offered by RWI to Keys Hospitality. (*See* Franchise Agreement §§ 18-18.2.) Specifically, Section 18.1.3 of the Franchise Agreement provides, in relevant part, that if Keys Hospitality "do[es] not complete [its] purchase of the Facility and the Location or execute an extension of any lease giving [it] a right to possession of the Facility and the Location for the remainder of the Term by June 4, 2017, [it] must repay the balance of the Development Incentive Note." (Franchise Agreement § 18.1.3.) Armstrong does not cite any other language within Section 18 or any other portion of the Franchise Agreement that allows for termination after three years and/or waives liquidated damages. Accordingly, Armstrong's argument for RWI's breach of the Franchise Agreement is without merit as he has failed to raise a genuine issue of material fact with regard to the "special stipulation" in the Franchise Agreement.

For the foregoing reasons, the Court finds that affirmative defenses raised by Armstrong fail to raise a genuine issue of fact as to RWI's proof that Keys Hospitality defaulted on its

13

obligations under the Franchise Agreement and Armstrong's breach of the Guaranty. Accordingly, RWI is entitled to summary judgment on the Sixth Count of its Complaint.

### B. RWI Is Entitled to Summary Judgment on Damages

RWI claims that Armstrong is liable under the Franchise Agreement and Guaranty for outstanding Recurring Fees, liquidated damages, prejudgment interest, attorneys' fees, and costs. (ECF No 90-4 at 9-14.)

Where the terms of a contract are clear and unambiguous, it is proper for the Court to determine the contract's meaning as a matter of law. *See Bethlehem Steel Corp. v. United States,* 270 F.3d 135, 139 (3d Cir. 2001). In the instant matter, the Court finds that the Guaranty, the termination provision in the Franchise Agreement (§11.2), and the provisions governing Recurring Fees (§7 and Schedule C), liquidated damages (§12.1), prejudgment interest (§7.3), and attorneys' fees and costs (§17.4) are clear and unambiguous.

#### 1. *Recurring Fees*

RWI seeks $121,828.18 in Recurring Fees, inclusive of interest. (ECF No. 90-4 at 10.) Section 7 of the Franchise Agreement defines Recurring Fees as consisting of: (1) royalties "equal to four and one half percent (4.5%) of Gross Room Revenues of the Facility accruing during the calendar month ... until the end of the Term"; (2) a marketing contribution and a basic reservation fee accruing "until the end of the Term"; (3) taxes "equal to any federal, state or local sales, gross receipts, use, value added, excise or similar tax assessed ... on the Recurring Fees ... when due"; (4) interest; and (5) a relicense fee when applicable. RWI has provided invoices referencing outstanding amounts owed as of December 17, 2021. (*See* ECF No 90-4 at 10; Mallet Aff. ¶ 32, Ex. I.) The Court finds the unambiguous language of the Franchise Agreement indicates RWI is entitled to Recurring Fees. However, the Court finds it is unclear from the invoices submitted by

14

RWI whether all of the outstanding amounts constitute Recurring Fees. Additionally, it is unclear from the invoices and Franchise Agreement what constitutes "Finance Charges." Accordingly, the Court directs Plaintiff to submit supplemental documentation outlining the requested Recurring Fees.

### 2. Liquidated Damages

Plaintiff seeks $500,000.00 in liquidated damages as a result of the premature termination of the Franchise Agreement. (ECF No. 90-4 at 10-13.)

Pursuant to Section 12.1 of the Franchise Agreement, Key Hospitality agreed that, in the event of a termination of the Agreement pursuant to section 11.2, it would pay liquidated damages to RWI in accordance with a formula specified in the Franchise Agreement. (Franchise Agreement §12.1.) Here, the applicable formula for calculating liquidated damages for the Facility is the product of $2,000.00 multiplied by the number of guest rooms Keys Hospitality was authorized to operate at the Facility at the time of termination. (*See* Franchise Agreement §12.1.) At the time of termination, Keys Hospitality was operating 250 guest rooms at the Facility. The rationale behind the Franchise Agreement's liquidated damages clause is to forecast the nature of lost Recurring Fees that [RWI] would otherwise have received but for the premature termination. *See Ramada Worldwide Inc. v. Khan Hotels LLC*, No. CV 16-2477, 2017 WL 187384, at *6 (D.N.J. Jan. 17, 2017), *amended*, No. CV 16-2477, 2017 WL 2831168 (D.N.J. June 30, 2017). The Court is satisfied that $500,000.00 in liquidated damages demonstrates a good faith attempt by the parties to reasonably forecast the loss resulting from the early termination of the Franchise Agreement. *See Elkins Motel Assocs.*, 2005 WL 2656676, at *10; (*see also* Franchise Agreement § 12.1.)

### 3. Prejudgment Interests

State law governs the availability of prejudgment interest on state law claims *Mid-Jersey Bank v. Fidelity-Mortgage Investors*, 518 F.2d 640, 645 (3d Cir. 1975). Under New Jersey law, prejudgment interest "has been regarded ... as compensatory- to indemnify the plaintiff for the loss of what the monies due him would [p]resumably have earned if payment had not been refused." *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 N.J. 474, 506, 323 A.2d 495 (1974).

Section 7.3 of the Franchise Agreement provides for prejudgment interest to be assessed at the rate of 1.5% per month. (Franchise Agreement § 7.3.) This provision is clear and unambiguous. Further, the Court agrees with RWI that the prejudgment interest rate of 1.5 percent applies to the liquidated damages sum. (*See* Franchise Agreement § 7.3 (establishing a 1.5% interest rate on any past due amount)); *see also Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, No. 02-2889, 2005 WL 3164205, at *10 (D.N.J. Nov. 10, 2005), *aff'd*, 244 F. App'x 522 (3d Cir. 2007) (finding plaintiff was "entitled to prejudgment interest at a rate of 1.5% per month" where the license agreement provided for monthly interest at that rate). However, the Court disagrees with RWI as to the date that liquidated damages began to accrue. RWI contends the accrual date is May 19, 2017, "thirty (30) days from the date of termination." (ECF No. 90-4 at 13.) However, Section 11.2 of the Franchise Agreement provides RWI "may terminate this Agreement when we send written notice to you or such later date as required by law or as stated in the default notice, when ... (2) [Keys Hospitality] discontinue[s] operating the Facility as a 'Ramada[.]'" Under this provision, it was RWI that terminated the Franchise Agreement at its option by sending Defendants a letter dated May 5, 2017, effectively declaring Defendants in breach of the Franchise Agreement. As such, the liquidated damages accrued thirty days after that letter, on June 4, 2017. Accordingly,

Plaintiff is entitled to $682,286.86 in interest[8] – June 4, 2017 (the first day liquidated damages were due under Section 12.1 of the Franchise Agreement, i.e., thirty days after the May 5, 2017 termination date) through the date of this Opinion, December 30, 2024, a period of 2767 days. *See Days Inn Worldwide, Inc. v. Savita Hosp. Grp.*, No. 13-2863, 2014 WL 3748204, at *3-4 (D.N.J. July 28, 2024) (awarding prejudgment interest on liquidated damages from thirty days after the plaintiff terminated the franchise agreement by sending a letter declaring the plaintiff was in breach through the day judgment was entered); *Honeysuckle Enters.*, 2005 WL 3164205, at *10 (awarding prejudgment interest on liquidated damages from thirty days after the plaintiff sent acknowledgment of termination through the date of judgment). Liquidated damages plus prejudgment interest (through December 30, 2024), therefore, totals $1,182,286.86.

Accordingly, the Court grants RWI its requested prejudgment interest, as set forth above.

### 4. Attorney's Fees and Costs

Under New Jersey law, in a breach of contract action, legal expenses can be recovered if the contract between the parties so provides. *Papalexiou v. Tower West Condominium*, 167 N.J. Super. 516, 530 (Ch. Div. 1979). Here, attorneys' fees and costs are addressed in a clear and unambiguous provision of the Franchise Agreement, which the Guaranty incorporates by reference. In particular, Section 17.4 of the Franchise Agreement states that the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."

---

[8] The interest rate of 1.5 percent per month is equivalent to a rate of 18 percent per year. (*See* Mallet Aff., ¶ 39.) Eighteen percent per year of the $500,000.00 liquidated damages amount is $90,000. (*See id.*). That amount divided by 365 days in a year equals the amount of interest due *per diem*: approximately $246.58. (*See id.*). From June 4, 2017 (the first day liquidated damages were due under Section 12.1 of the Franchise Agreement, i.e., thirty days after the May 5, 2017 termination date), to the date of this Opinion, 2767 days elapsed. Thus, the product of $246.58 multiplied by 2767 days equals the prejudgment interest due for the period: $682,286.86.

(Franchise Agreement § 17.4.) As the prevailing party in this case, RWI is thus entitled to reasonable attorneys' fees and costs that it incurred in connection with this action. *See Jackson Hewitt, Inc. v. Barnes Enters.*, No. 10-05108, 2012 1600572, at *3 (D.N.J. May 7, 2012) (awarding attorneys' fees and costs per franchise agreement); *Red Roof Franchising, LLC v. AA Hosp. Northshore, LLC*, 877 F. Supp. 2d 140, 154 (D.N.J. 2012) (holding that plaintiff was entitled to attorneys' fees and costs because "[d]efendants d[id] not dispute the provision in the franchise agreement or guarantee"). RWI claims it has incurred attorneys' fees totaling $12,600 and $4,188.50 in costs and expenses in connection with this matter. (Couch Cert. ¶¶ 20-22, Ex. Q.) However, RWI "does not provide any bills or invoices to support" their representation of "attorneys' fees and costs." *BMO Harris Bank, N.A. v. Naileen Transp. Corp.*, No. 21-14002, 2021 WL 5506911, at *4 (D.N.J. Nov. 19, 2021). Without such details, the Court cannot determine whether RWI's request for attorneys' fees and costs are reasonable and appropriate. *See id.*; *see also* L. Civ. R. 54.2(a) (providing that an attorney seeking fees must provide a description of the services rendered, including the date of service, the billing rate, and who performed the work). Plaintiff is provided leave to submit documentation to support its attorneys' fees and costs pursuant to Local Civil Rule 54.2.

## IV. CONCLUSION

For the foregoing reasons, the RWI's motion for summary judgment against Armstrong only on the Sixth Count of its Complaint in the matter *Ramada Worldwide Inc. v. Keys Hospitality, LLC, et al.*, Civil Action No. 18-3993 (ECF No. 90) is **GRANTED**. RWI is entitled to $500,000.00 in liquidated damages and $682,286.86 in prejudgment interest on the liquidated damages award. The Court **RESERVES** decision on Recurring Fees and attorneys' fees pending receipt and review

of supplemental submissions as directed by the Court. An appropriate Order accompanies this Opinion.

**DATED:** December 30, 2024

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge